IN THE CIRCUIT COURT, FOURTH

JUDICIAL CIRCUIT IN AND FOR

DUVAL COUNTY, FLORIDA

CASE NO.:

Division:

NICHOLAS HARDING,

*Plaintiff,*

vs.

GOOGLE LLC,

*Defendant*.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Nicholas Harding, brings this complaint against Google LLC ("Defendant"), and alleges as

follows:

## PARTIES

1. Plaintiff, Nicholas Harding, is an individual and resident of Jacksonville, Florida.

2. Defendant, Google LLC, is a limited liability company organized under the laws of the State of

   Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View,

   California 94043.

ACCEPTED: DUVAL COUNTY, JODY PHILLIPS, CLERK, 02/22/2023 10:27:44 AM

3. Defendant operates as a social media platform in Florida as defined in Florida Statute

   501.2041(1)(g) as they:

   1. Are an information service, system, Internet search engine, or access software provider;

   2. Provide or enable computer access by multiple users to a computer server (an Internet

      platform or a social media site);

   3. Operate as a sole proprietorship, partnership, limited liability company, corporation,

      association, or other legal entity;

   4. Do business in the state of Florida;

   5. And:

      A.  Have annual gross revenues exceeding $100 million;

      B. AND Have at least 100 million monthly individual platform participants globally.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to Florida Statute 501.2041(7) ;

2. Venue is proper in Duval County because Defendant is registered to do business in Florida,

   conducts business within the county, and because a substantial part of the events giving rise to

   Plaintiff's claim occurred within the county.

## FACTS

1. On December 29th, 2022, Plaintiff created a Google ad for a petition that he created to be

   placed on the ballot for board of directors of his Credit Union.

2. Plaintiff used a business debit card for a company he owns to pay for this advertisement. The

   card was not charged at the time.

3. Plaintiff subsequently received an email confirming that his ad was being reviewed.

4.  On December 29th, 2022, Plaintiff's Google Ads account was suspended due to "suspicious payment activity."

5.  Florida Statute 501.2041(2)(d)(1) establishes a notification requirement for any censorship actions taken by a Social Media Platform.

6.  Florida Statute 501.2041(3) sets forth the requirements of such notifications.

7.  This was communicated to the Plaintiff, initially, via direct electronic notification on December 29th stating "Your account is suspended - We've detected suspicious payments in your account."

8.  The same day, the Plaintiff received an email informing him of the suspension.

9.  As defined in Florida Statute 501.2041(1)(b), "censor" includes "any action taken by a social media platform to delete, regulate, restrict, edit, alter, inhibit the publication or republication of, suspend a right to post, remove, or post an addendum to any content or material posted by a user."

10. Defendant's suspension of Plaintiff's account resulted in the suspension of Plaintiff's right to post advertising materials, and the advertisement for Plaintiff's petition being unpromoted, this additionally prevented Plaintiff from having the opportunity to collect the required number of signatures for his petition by the deadline of January 2nd, 2023.

11. Florida Statute 501.2041(2)(a) states that a social media platform must publish the standards, including **detailed** definitions, it uses or has used for determining how to censor, deplatform, and shadow ban.

12. Florida Statute 501.2041(2)(b) states that a social media platform must apply censorship, deplatforming, and shadow banning standards in a consistent manner among its users on the platform.

13. Defendant's policy regarding suspicious payments states that "if we detect suspicious or fraudulent payment activity on your account, we may restrict how much the account can spend

or suspend the account." However, this standard does not include a **detailed** definition of

"suspicious payment activity" that would result in either account suspension or restriction.

14. Plaintiff appealed the suspension on December 30th, 2022, but the plaintiff received an email at

2:22AM the same day informing him that his account was in violation of Google Ads policies.

15. Plaintiff received an email at 2:52AM December 30th, 2022 informing him, again, of the

suspension.

16. Plaintiff submitted another appeal which was denied in an email dated January 5th.

17. Plaintiff submitted an additional appeal which was denied in an email on February 12th.

18. After being denied on February 12th, a secondary suspension reason of "unacceptable business

practices" was added to the account.

19. Plaintiff opened another Google Ads account for a business he runs on February 10th, 2023.

20. This account was subsequently suspended on February 20th, 2023 as a direct result of the

suspension of his original account.

21. Plaintiff's use of his business debit card to pay for the advertisement was legitimate and lawful,

and he had the funds available to cover the cost of the advertisement, therefore the claim made

by Google that the payment activity was "suspicious" indicates inconsistent application of

censorship standards, unless every user who uses their business debit card is censored.

22. Plaintiff suffered harm as a direct and proximate result of Google's actions, Plaintiff has suffered

and continues to suffer damages including, but not limited to, lost income and lost business

opportunities as the Google advertising platform is likely the largest advertising platform in the

country.

### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

Plaintiff incorporates by reference all of the allegations contained in the foregoing paragraphs.

1. Google's suspension of Plaintiff's Google Ads account was an unfair or deceptive act or practice in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

2. By Failing to provide a detailed definition of "suspicious payment activity" in their standards, Google engaged in deceptive trade practices per Florida Statutes 501.2041(2) and 501.204.

3. By failing to provide a detailed definition of "suspicious payment activity" in emails sent to the plaintiff, and applying the standard inconsistently, Google engaged in deceptive trade practices per Florida Statutes 501.2041(2)(d), 501.2041(3), and 501.204.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Google LLC and award the following relief:

1. $100,000 in statutory damages for the initial suspension of plaintiff's advertising account (FS 501.2041(2)(b));

2. $100,000 in statutory damages for failure to "Include a thorough rationale explaining the reason that the social media platform censored the user" in the initial direct electronic notification dated 12/29/2022 notifying the plaintiff of the suspension (FS 501.2041(2)(d)(1));

3. $100,000 in statutory damages for failure to "Include a thorough rationale explaining the reason that the social media platform censored the user" in the initial email dated 12/29/2022 notifying the plaintiff of the suspension (FS 501.2041(2)(d)(1));

4. $100,000 in statutory damages for failure to "Include a thorough rationale explaining the reason that the social media platform censored the user" in the second email dated 12/30/2022 notifying the plaintiff of the suspension (FS 501.2041(2)(d)(1));

5. $100,000 in statutory damages for failure to "Include a thorough rationale explaining the reason that the social media platform censored the user" in the email responding to the plaintiff's appeal dated 12/30/2022 (FS 501.2041(2)(d)(1));

6. $100,000 in statutory damages for failure to "Include a thorough rationale explaining the reason that the social media platform censored the user" in the email responding to the plaintiff's appeal dated 01/05/2023 (FS 501.2041(2)(d)(1));

7. $100,000 in statutory damages for failure to "Include a thorough rationale explaining the reason that the social media platform censored the user" in the email responding to the plaintiff's appeal dated 02/12/2023 (FS 501.2041(2)(d)(1));

8. An order compelling Google to restore Plaintiff's Google Ads accounts and any associated advertising campaigns;

9. Any other relief that the Court deems just and proper.

Respectfully submitted,

**Nicholas Harding**